## LADD v. MISSOURI COAL & MINING CO.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1895.)

No. 420.

TRIAL—RECEPTION OF EVIDENCE—OFFER TO PROVE.

On an issue as to the acceptance of a proposed contract for the sale of lands, plaintiff offered to prove a conversation between witness and one M. The offer was not accompanied by any statement as to what the conversation was, or that it was material to the issue, and it did not appear from the record that M. was defendant's agent in the matter of the proposed sale. *Held* insufficient to sustain an exception to the exclusion of the testimony.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Action by William M. Ladd against the Missouri Coal & Mining Company to recover damages for breach of contract. The court directed a verdict for defendant, and plaintiff brings error.

Upton M. Young, for plaintiff in error.
James A. Seddon and Chester B. McLoughlin (James L. Blair and T. J. Rowe, with them on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. This action was commenced in the United States circuit court for the Eastern district of Missouri by William M. Ladd, the plaintiff in error, against the Missouri Coal & Mining Company, the defendant in error, to recover $34,637 damages for the breach of an alleged contract of

brokerage. At the close of the testimony, by direction of the court, the jury returned a verdict for the defendant, upon which final judgment was rendered, and thereupon the plaintiff sued out this writ of error. The petition alleges that the defendant was the owner of certain lands in Lincoln county, Mo., which are particularly described, and that on or about the 12th day of January, 1892, the defendant entered into a brokerage contract with the plaintiff, by the terms of which the plaintiff was to have the exclusive right to sell these lands until July 1, 1892, for a sum not less than $60,000, and for his services in making the sale the plaintiff was to have one-half of all he sold the land for above $60,000, and was to receive $3,000 commission before beginning to divide with the defendant the excess over $60,000. It is alleged: That the exclusive right of the plaintiff to sell the lands on the terms mentioned was extended from time to time up to and including the 15th day of November, 1892, and that on the 3d day of November, 1892, the plaintiff sold the lands to Azel F. Hatch on the following terms, namely: $5,000 to be paid in cash on execution of the contract of sale; $20,000 to be paid on the 1st day of March, 1893, upon delivery of a good and sufficient warranty deed; and the balance to be paid in four equal annual payments, with interest at 6 per cent. per annum, payable semiannually, to be secured by notes and trust deed on the lands. That Hatch prepared an agreement embracing the terms of sale agreed upon by the plaintiff and Hatch, which was forwarded by the plaintiff to the defendant for its approval on the 8th of November, 1892, and that the defendant, prior to the 15th of November, 1892, accepted the same, and promised to execute it, but afterwards neglected and refused to do so for an unreasonable length of time, and until Hatch withdrew his offer to purchase. Though the record is somewhat voluminous, the case rests in a small compass. It is not claimed by the learned counsel for the plaintiff in error that the plaintiff at any time found a purchaser for the land on the terms specified at the time the land was put into his hands for sale. The lengthy correspondence carried on between the parties shows that a sale upon any other terms was subject to the defendant's approval. The plaintiff's contention is that he sold the land to Hatch, and that the defendant, by and through its agent, one Murdock, accepted the terms and approved the sale prior to the 15th of November, 1892, the date on which the plaintiff's authority to sell the land terminated. Hatch's proposition to purchase was in writing in the form of an agreement to be signed by the defendant, but which Hatch did not sign. The plaintiff claims that Murdock, acting as agent for the defendant, approved and accepted this agreement, though he did not sign it. Unless the plaintiff can maintain this claim, he has no cause of action, for it is quite clear from the pleadings and evidence that neither this nor any other sale of the property negotiated by the plaintiff was ever accepted by the defendant, or any other person authorized to act for it, prior to the expiration of the plaintiff's authority. The plaintiff relies exclusively on the alleged

v.66F.no.6—56

sale to Hatch, and insists that he was prepared to prove, and
offered to prove, that Murdock did approve and accept for the
defendant the terms of sale agreed upon between the plaintiff
and Hatch, and that the court erroneously excluded this evi-
dence. Whatever the fact may have been, the record does not
support this contention. On this subject the record discloses
that while the plaintiff was on the stand as a witness, the following
proceedings took place:

"Q. You also stated that on November 13th Mr. Murdock returned in the
afternoon to your office? A. I did. Q. And you handed him the proposed
contract with Mr. Hatch? A. I did. (Plaintiff offers to prove by his witness
the conversation between him and Mr. Murdock relating to the contract,
which conversation was had at St. Louis on November 14, 1892, but, defend-
ant objecting, the court sustained the objection, and refused to allow plaintiff
to testify to any conversation between him and said Murdock on November
14th, save such as related to the transmission of the contract from St. Louis
to Port Henry, to which action of the court in so ruling plaintiff then and there
duly excepted.)"

It will be observed that all that the plaintiff offered to prove was
"the conversation between him and Murdock relating to the con-
tract." This offer was not accompanied by any statement as to
what that conversation was, or that it was material to any issue
then being tried. The insufficiency of the exception is rendered
apparent by a single consideration. If this court should reverse
the case because the witness was not permitted to state the con-
versation, what is there in this record to show or suggest that
upon another trial, when the witness is allowed to state the con-
versation, a single word of it will be material to the case or ad-
missible in evidence? The offer to prove the "conversation,"
without some statement as to what it was, and showing its ma-
teriality, was too general to be made the foundation of a valid
exception. The rule is well settled that the bill of exceptions must
show the materiality of the evidence which was tendered and
rejected. The evidence rejected, or a statement of what it tended
to prove, must appear in the bill of exceptions. Packet Co. v.
Clough, 20 Wall. 528; Railway Co. v. Smith, 21 Wall. 255; Thomp-
son v. Bank, 111 U. S. 529, 4 Sup. Ct. 689; Clement v. Packer, 125
U. S. 309, 8 Sup. Ct. 907; Patrick v. Graham, 132 U. S. 627, 10
Sup. Ct. 194; Lyon v. Batz, 42 Mo. App. 606; Bener v. Edging-
ton, 76 Iowa, 105, 40 N. W. 117. Moreover, it does not appear
from the record before us that Murdock was the agent of the
defendant for the purpose of selling the land, or that he had any
authority to approve or confirm any sale thereof made by the
plaintiff. It results that the circuit court did not err in directing
the jury to return a verdict for the defendant, and its judgment is
therefore affirmed.